SANGYE INCE-JOHANNSEN (OSB #193827)
Western Environmental Law Center
120 Shelton McMurphey Blvd, Ste 340
Eugene, OR 97401
(541) 778-6626 | Phone
sangyeij@westernlaw.org

SUSAN JANE BROWN (OSB #054607)
Western Environmental Law Center
4107 NE Couch St.
Portland, OR 97232
(503) 914-1323 | Phone
brown@westernlaw.org

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
MEDFORD DIVISION

| | |
|---|---|
| KLAMATH-SISKIYOU WILDLANDS CENTER, OREGON WILD, and CASCADIA WILDLANDS,<br>　　*Plaintiffs,*<br><br>vs.<br><br>UNITED STATES FISH AND WILDLIFE SERVICE, and UNITED STATES BUREAU OF LAND MANAGEMENT,<br>　　*Defendants.* | Civ. Case No. 1:20-cv-00952-AA<br><br>**PLAINTIFFS' MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR JUDICIAL NOTICE** |

PAGE 1 – MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR
　　　JUDICIAL NOTICE

## MOTION

Plaintiffs Klamath-Siskiyou Wildlands Center, Oregon Wild, and Cascadia Wildlands (collectively, KS Wild) hereby respectfully request that the Court take judicial notice of two documents. First, pursuant to the Federal Register Act, KS Wild requests that the Court take judicial notice of the contents of a final rule published in the Federal Register, *Endangered and Threatened Wildlife and Plants; Revised Designation of Critical Habitat for the Northern Spotted Owl; Delay of Effective Date*, 86 Fed. Reg. 22,876 (Apr. 30, 2021). This final rule is attached hereto as Exhibit A.

Second, pursuant to the Federal Register Act and Federal Rule of Evidence (FRE) 201, KS Wild requests that the Court take judicial notice of a memorandum to Acting Assistant Regional Director, Ecological Services, Interior Regions 9/12, Portland, Oregon from State Supervisor, Oregon Fish and Wildlife Office, Portland, Oregon, titled *Response to January 7, 2021, Memorandum, "Extinction Analysis for the Northern Spotted Owl," from Director Skipwith to Secretary Bernhardt* and cited as "FWS 2021b" in the final rule published in the Federal Register and referenced above as Exhibit A, 86 Fed. Reg. 22,876. FWS 2021b is attached hereto as Exhibit B.

Pursuant to Local Rule 7-1(a), KS Wild certifies that that it has consulted with federal defendant Fish and Wildlife Service, which has declined to take a position on KS Wild's Motion until the government has had an opportunity to review the Motion and examine KS Wild's use of the proffered

PAGE 2 – MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR
       JUDICIAL NOTICE

documents in its Reply Memorandum in Support of Motion for Summary Judgment, filed herewith.

## MEMORANDUM AND ARGUMENT

**I.    The Final Rule Delaying the Effective Date of the Revised Designation of Critical Habitat for the Northern Spotted Owl (Exhibit A).**

The proffered document is properly before the Court on a motion for judicial notice. The document was published by the Department of the Interior, Fish and Wildlife Service (FWS) in the Federal Register on April 30, 2021. 86 Fed. Reg. 22,876. The Federal Register Act mandates that "[t]he contents of the Federal Register shall be judicially noticed[.]" 44 U.S.C. § 1507. Because the proffered document was published in the Federal Register, it is subject to judicial notice. *Id*.

KS Wild calls the Court's attention in particular to the proffered document's description of the second document for which plaintiffs request judicial notice, FWS 2021b: "Our concerns represented in...FWS 2021b[] align with the [Fish and Wildlife] Service's and Department [of Interior]'s Code of Scientific and Scholarly Conduct (305 DM 3.2; 212 FW 7), which obligates Service staff to use the 'most appropriate, best available, high quality scientific and scholarly data and information' to inform sound decisionmaking." 86 Fed. Reg. 22,879.

**II.    FWS 2021b (Exhibit B).**

The proffered document, FWS 2021b, is incorporated by reference in the

first document for which KS Wild seeks judicial notice pursuant to the Federal Register Act, FWS's Final Rule delaying the effective date of its revised designation of critical habitat for the Northern Spotted Owl. 86 Fed. Reg. 22,879. The Final Rule cites FWS 2021b as pivotal "new information" suggesting that the revised designation of critical habitat may not have been based on the "best available science," and describes FWS 2021b as representing the "most appropriate, best available, high quality scientific and scholarly data and information" leading it to delay the effective date of its revised designation of critical habitat for the northern spotted owl. *Id*. For this reason, it also qualifies for judicial notice under the Federal Register Act. 44 U.S.C. § 1507; *see also United States v. Int'l Union of Operating Eng'rs, Local 701*, 638 F.2d 1161, 1166 n.9 (9th Cir. 1979) (judicially noticing an interpretive memorandum published in the Federal Register).

Furthermore, the proffered document is properly before the Court pursuant to the Federal Rules of Evidence (FRE) 201 because the document was produced by FWS, a federal agency within the United States government. *Papai v. Harbor Tug and Barge Co.*, 67 F.3d 203, 207 n.5 (9th Cir. 1995), *rev'd on other grounds*, 520 U.S. 548 (1997) ("judicial notice is properly taken of orders and decisions made by…administrative agencies"). The contents of this agency document are "adjudicative facts" that are not subject to reasonable dispute. FRE 201(a)–(b). The accuracy of the document is capable of accurate and ready determination by resort to sources whose accuracy cannot be

PAGE 4 – MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR
       JUDICIAL NOTICE

reasonably questioned. *Id.*; *E.E.O.C. v. Ratliff,* 906 F.2d 1314, 1318 n.6 (9th Cir. 1990); *Singh v. Ashcroft,* 393 F.3d 903, 905 (9th Cir. 2004) (the existence of agency-prepared documents and their conclusions are "capable of accurate and ready determination," are readily accessible on official web sites of various state and federal agencies, and are therefore appropriate for judicial notice).

Similarly, a court may take judicial notice of matters of public record, including agency records. *See Mack v. S. Bay Beer Distribs., Inc.,* 798 F.2d 1279, 1282 (9th Cir. 1986); *Mullis v. U.S. Bankr. Ct.,* 828 F.2d 1385, 1388 (9th Cir. 1987); *Interstate Nat. Gas Co. v. S. Cal. Gas Co.,* 209 F.2d 380, 385 (9th Cir. 1953) (judicial notice of records of administrative bodies); *Ursack, Inc. v. Sierra Interagency Black Bear Group,* No. 08-1808, 2009 WL 2422784, *6 ( N.D. Cal. 2009) (judicial notice of agency materials posted on agency website); *New Mexico ex rel. Richardson v. Bureau of Land Mgmt.,* 565 F.3d 683, 702 n.22 (10th Cir. 2009) (taking judicial notice of information on government websites in APA case).

The FWS prepared FWS 2021b as part of its decisionmaking process regarding the agency's revision of critical habitat for the northern spotted owl, and made the document publicly available on Regulations.gov as part of its rulemaking docket.[1] In response to a settlement agreement with the timber

---

[1]   *See* FWS, *Memorandum from State Supervisor, Oregon Fish and Wildlife Office, to Acting Assistant Regional Director, Ecological Services, Interior Regions 9/12, Portland, Oregon* (Jan. 15, 2021), available at
https://www.regulations.gov/document/FWS-R1-ES-2020-0050-1784.

PAGE 5 – MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR
             JUDICIAL NOTICE

industry, *Carpenters Industrial Council v. Bernhardt*, 13-cv-00361-RJL (D.D.C. April 26, 2020) (order on stipulated settlement agreement), in August 2020 FWS proposed to eliminate approximately 200,000 acres of critical habitat for the species exclusively located on Oregon and California lands in Oregon managed by the Bureau of Land Management (BLM), *Proposed Rule; Revised Designation of Critical Habitat for the Northern Spotted Owl*, 85 Fed. Reg. 48,487 (Aug. 11, 2020). However, in its final rule, FWS eliminated approximately 3.4 million acres of northern spotted owl critical habitat across three states managed by both the BLM and United States Forest Service (USFS). *Revised Designation of Critical Habitat for the Northern Spotted Owl*, 86 Fed. Reg. 4,820 (Jan. 15, 2021).

On the same day that FWS published its final revised critical habitat rule, Oregon Fish and Wildlife Office[2] State Supervisor Dr. Paul Henson sent a memorandum to the FWS Acting Assistant Regional Director for Ecological Services that was severely critical of the impending decision, and supplied a detailed scientific response to the decision calling into question the conclusion that the final rule would not result in the extinction of the northern spotted owl. In fact, Dr. Henson concluded that "Most scientists (myself included) would conclude that such an outcome [elimination of 3.4 million acres of critical habitat] will, therefore, result in the eventual extinction of the listed

---

[2]  This FWS office also leads the recovery effort for the northern spotted owl throughout the species' range. FWS 2021b, 1.

PAGE 6 – MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR
             JUDICIAL NOTICE

subspecies. No one can give a precise timeframe for when this would occur, but it is a reasonable scientific conclusion." FWS 2021b, 1.[3] As noted above, FWS cited FWS 2021b as new information suggesting that the revised critical habitat designation may have "failed to consider the best available science," and described FWS 2021b as "align[ed] with the [Fish and Wildlife] Service's...obligat[ion]...to use the 'most appropriate, best available, high quality scientific and scholarly data and information' to inform sound decisionmaking." 86 Fed. Reg. 22,879.

      FWS 2021b is relevant to the issues pending before the Court in three ways. First, the document provides contemporary information about the biological status of the northern spotted owl from the expert consulting agency, and indeed, the individual responsible for FWS' northern spotted owl recovery program. Dr. Henson's expert opinion about the threats to the species, whether the elimination of designated critical habitat or the impact of the invasive barred owl, are relevant and probative facts that bear upon the issues raised in KS Wild's Complaint and Motion for Summary Judgment.

      Second, FWS 2021b addresses issues before this court. In particular, FWS 2021b acknowledges the uncertainty associated with a permanent barred

---

[3] FWS has since acknowledged substantial concerns with the 2021 final critical habitat rule and has twice delayed its effective date pending an internal agency and departmental review. *Revised Designation of Critical Habitat for the Northern Spotted Owl; Delay of Effective Date*, 86 Fed. Reg. 11,892 (March 1, 2021); 86 Fed. Reg. 22,876.

PAGE 7 – MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR
            JUDICIAL NOTICE

owl control program:

> Not surprisingly, models and the barred owl removal experiment do suggest that NSO recovery chances improve significantly if an effective barred owl management program is put in place and maintained. **However, it is premature to conclude that such a program will be put in place and that it will be effective. There are tremendous economic, logistical, social, and legal obstacles that need to be overcome first. The Service is working hard toward this goal, but at this point in the process it is speculative at best that this outcome will be achieved.** Also, it must be noted that the impact of barred owls on NSO has made the conservation of extant habitat even more pressing, at least in the near term until a barred owl management plan is in place and shown to be effective. The CH exclusions work at cross-purposes with this need.

FWS 2021b, 2-3 (emphasis added). In this case, KS Wild has argued that the Fiscal Year 2019 Biological Opinion (FY 2019 BiOp) relies on uncertain mitigation measures to reach a finding of no jeopardy or destruction or adverse modification of critical habitat, and in particular relied on the implementation of a permanent barred owl control program to "provide for territories that will support future spotted owl populations." BLM AR 00390, 00394, 00432; (doc. 17, 27–30) (KS Wild's Opening Brief); (doc. 20, 28–33) (KS Wild's Reply Brief). As KS Wild has explained, while early results from the experimental barred owl control program are promising, the future of a permanent control program is uncertain due financial, logistical, and permitting constraints. Due to its uncertainty, FWS may not rely on it for its no jeopardy/destruction or adverse modification of critical habitat findings that anchor the FY 2019 BiOp's authorization of the removal or downgrading of 6,437 acres of northern spotted owl nesting, roosting, and foraging habitat, and 2,296 acres of designated

PAGE 8 – MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR
        JUDICIAL NOTICE

critical habitat for the species. *Ctr. for Biological Diversity v. Bernhardt*, 982 F.3d 723, 743 (9th Cir. 2020); *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 524 F.3d 917 (9th Cir. 2008).

Third, FWS 2021b reiterates the importance of retaining all currently extant suitable northern spotted owl habitat to buffer the effects of current and historic loss of suitable habitat and the competitive pressure of the barred owl on the listed species. Dr. Henson concludes that

> Put simply, the justification for the conclusion made in my December 9, 2020, email to the Director is: (1) NSO populations are declining precipitously due to a combination of historic habitat loss and more recent competition with the barred owl; and (2) the only way to arrest this decline and have a high probability of preventing extinction (in any timeframe) is to manage the barred owl threat and conserve adequate amounts of high quality habitat distributed across the range in a pattern that provides acceptable levels of connectivity as well as protection from stochastic events.

FWS 2021b, 4. KS Wild has also argued in this litigation that retention of suitable spotted owl habitat is essential to the conservation and recovery of the species, particularly given the competitive advantage barred owls have over spotted owls. (doc. 17, 20–24); (doc. 20, 20–25). If the experimental barred owl control program is successful and a permanent program is initiated, then the "availability of old forests and associated prey species are likely to be the most strongly limiting factors in the competitive relationships between these species[,]" which highlights "the importance of maintaining high-quality habitat in late-successional forests." BLM AR 04567. This is an issue that FWS did not address in the FY 2019 BiOp when it authorized the loss of 6,437 acres

PAGE 9 – MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR
             JUDICIAL NOTICE

of nesting, roosting, and foraging habitat to logging. FWS 2021b confirms that retention of suitable spotted owl habitat remains the best available science regarding the conservation and recovery of the species.

### III.   Conclusion.

For the forgoing reasons, KS Wild asks the Court to GRANT KS Wild's Motion for Judicial Notice of FWS 2021b.

Respectfully submitted May 18, 2021.

/s/ Susan Jane M. Brown
SUSAN JANE BROWN (OSB #054607)
Western Environmental Law Center
4107 NE Couch St.
Portland, OR 97232
(503) 914-1323 | Phone
brown@westernlaw.org

Sangye Ince-Johannsen (OSB #193827)
Western Environmental Law Center
120 Shelton McMurphey Blvd, Ste 340
Eugene, OR 97401
(541) 778-6626 | Phone
sangyeij@westernlaw.org

*Attorneys for Plaintiffs*